LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JAMES MURPHY, on behalf of himself and
all others similarly situated,

              Plaintiff,

              -against-

EHARMONY, INC.,

              Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

---

Plaintiff, JAMES MURPHY (hereinafter "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, hereby files this Class Action Complaint against Defendant, EHARMONY, INC. (hereinafter "Defendant"), and states as follows:

**<u>INTRODUCTION</u>**

1.    This class action seeks to put an end to systemic civil rights violations committed by Defendant against the blind in New York State and across the United States. Defendant is denying blind individuals throughout the United States equal access to the services Defendant provides to its non-disabled customers through www.eharmony.com (hereinafter the "Website"). Defendant provides to the public a wide array of dating resources offered by the Website. Yet, Defendant contains access barriers that make it difficult, if not impossible, for

blind customers to use the Website. In fact, the access barriers make it impossible for blind users to independently navigate or browse through other users' profiles on the Website. Defendant thus excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind people to fully and independently access a variety of services, including online dating.

2.    Plaintiff is a blind individual. He brings this civil rights class action against Defendant for failing to design, construct, and/or own or operate a website that is fully accessible to, and independently usable by, blind people.

3.    Specifically, Defendant has many access barriers preventing blind people from independently navigating the Website and browsing potential dating partners using assistive computer technology.

4.    Plaintiff uses the terms "blind person" or "blind people" and "the blind" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

5.    Approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.[1] There are approximately 400,000 visually impaired persons in New York State.[2]

6.    Many blind people enjoy online dating just as sighted people do. The lack of an accessible website means that blind people are excluded from the rapidly expanding online dating

---

[1] Americans with Disabilities: 2010 Report, U.S. Census Bureau Reports
[2] American Foundation for the Blind, State-Specific Statistical Information, January 2015

industry and from independently accessing the Website

7.   Despite readily available accessible technology, such as the technology in use at other heavily trafficked dating websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. The Website's sighted customers can create their own profiles, independently browse through others' profiles, and find matches online without the assistance of others. However, blind people must rely on sighted companions to assist them in accessing and enjoying the dating services of the Website.

8.   By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.   Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services and facilities by making reasonable accommodations for persons with disabilities.

10.  Plaintiff browsed and intended to find a potential date on the Website. However, unless Defendant remedies the numerous access barriers on the website, Plaintiff and Class members will continue to be unable to independently navigate, browse, and find a date on the Website.

11.  This complaint seeks declaratory and injunctive relief to correct the Website's

policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and remove accessibility barriers on Defendant so that Plaintiff and the proposed Class and Subclass of customers who are blind will be able to independently and privately use Defendant's website. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

### JURISDICTION AND VENUE

12.  This Court has subject matter jurisdiction of this action pursuant to:

    a.    28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA"); and

    b.    28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

13. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq.*) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq.* ("City law").

14.  Venue is proper pursuant to N.Y. C.P.L.R. § 503(a) based on the place of residence of Plaintiff. Plaintiff is a resident of New York State. Defendant is subject to personal jurisdiction in the Southern District of New York because Defendant has established minimum contacts in the forum state,

as a substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in New York State because Plaintiff attempted to create a dating profile on the Website in Manhattan. Defendant also has been and is committing the acts alleged herein New York State, has been and is violating the rights of consumers in New York State, and has been and is causing injury to consumers in New York State. A substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in New York State.

## PARTIES

15. Plaintiff is and has been at all times material hereto a resident of New York County, New York.

16. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the services of the Website as a result of accessibility barriers on the Website. Most recently in October 2017, Plaintiff attempted to find a match on the Website but could neither create a profile nor browse potential dates due to the inaccessibility of the website. The inaccessibility of the Website has deterred him and Class members from enjoying the benefits of online dating.

17. Defendant is an American for-profit corporation organized under the laws of Delaware with a process of service address at 251 Little Falls Drive, Wilmington, DE 19808.

18. Defendant owns and operates the Website, which is a place of public accommodation. The Website provides to the public an important online dating service. Among other things, Defendant provides access to the array of services offered to the public by the Website, including

personalized dating services and other benefits related to these services. The inaccessibility of Defendant has deterred Plaintiff from creating a profile and finding a potential date online.

19. Plaintiff, on behalf of himself and others similarly situated seeks full and equal access to the services provided by Defendant through the Website.

## CLASS ACTION ALLEGATIONS

20. Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Defendant and as a result have been denied access to the enjoyment of goods and services offered by Defendant during the relevant statutory period."

21. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

22. There are hundreds of thousands of visually impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually impaired. Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

23. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Defendant and Defendant Stores. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently access the Website.

24. There are common questions of law and fact common to the class, including without

limitation, the following:

    a.    Whether the Website is a "public accommodation" under the ADA;

    b.    Whether the Website is a "place or provider of public accommodation" under the laws of New York;

    c.    Whether Defendant through the Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

    d.    Whether Defendant through the Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the laws of New York.

25. The claims of the named Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on the Website, so it can be independently accessible to the class of people who are legally blind.

26. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

27. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting

only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

28. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

29. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FACTUAL ALLEGATIONS

30. The Website is a service and benefit offered by Defendant throughout the United States, including New York State.

31. The Website is an online dating website. The Website allows the user to create a profile; browse potential dates; interact with other users; and perform a variety of other functions.

32. Among the features offered by Defendant are the following:

    (a)    a subscription service, which allows users to create profiles and find potential dates;

    (b)    a Matches tab, which allows users to browse other users' profiles;

    (c)    compatibility tests;

    (d)    success stories; and

    (e)    dating forums and resources.

33. This case arises out of the Website's policy and practice of denying the blind access to the Website, including the services offered by Defendant through the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, blind individuals have

been and are being denied equal access to the Website, as well as to the services and benefits offered to the public through the Website.

34.  The Website denies the blind access to services and information made available through the Website by preventing them from freely navigating the Website.

35.  The Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and blind persons.

36.  The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

37.  There are well-established guidelines for making websites accessible to blind people. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are

accessible, and adding headings so that blind people can easily navigate the site. Without these very basic components a website will be inaccessible to a blind person using a screen reader.

38.   The Website contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling; lack of navigation links; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

39.   Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on the Website that lack a text equivalent, such as the photos of the other users. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. (Screen readers detect and vocalize alt-text to provide a description of the image to a blind computer user.) Even upon opening the website, blind customers are unable to fill in their gender or sought companion's gender due to the lack of alt-text. Due to this initial barrier, blind users are unable to enter the website and begin creating a profile. As a result, Plaintiff and blind Defendant customers are unable to determine what is on the website, browse the site, and navigate its services independently.

40.   Plaintiff must tab through every menu option and footer on the site to reach the desired service. The lack of navigation links on the Website makes attempting to navigate through the Website even more time consuming and confusing for Plaintiff and blind consumers.

41.   The Website requires the use of a mouse to navigate independently and browse

potential matches. The Website does not respond to the keyboard in its initial profile set-up windows, as a result, blind users cannot fill in their personal information. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which requires the use of a mouse to browse profiles, denies Plaintiff and blind customers the ability to independently navigate the Website.

42. Due to the Website's inaccessibility, Plaintiff and blind customers must in turn spend time and energy in online dating. If the Website was accessible, a blind person could independently enjoy dating services via the Internet as sighted individuals do.

43. According to WCAG 2 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on the Website to reach the desired service. Thus, the Website's inaccessible design, which requires the use of a mouse to navigate through profiles, denies Plaintiff and blind customers the ability to independently enjoy online dating on the Website.

44. The Website thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of Defendant.

45. Plaintiff has made numerous attempts to enjoy the services of the Website, most recently in October 2017, but was unable to do so independently because of the many access

barriers on the Website, causing it to be inaccessible and not independently usable by, blind and visually impaired individuals.

46.   Plaintiff experienced many barriers in his attempt to access the Website. For instance, the Web Content Accessibility Guidelines (WCAG) are part of a series of web accessibility guidelines published by Web Accessibility Initiative (WAI) of the World Wide Web Consortium (W3C), which are the main international standards organization for the Internet. Plaintiff was completely blocked from browsing potential dating profiles since the Website is barely accessible. Defendant has failed to adhere to the recommendations of many of these guidelines such as,

   a.  WCAG 2.1 recommending businesses to make all functionality available from a keyboard since Defendant requires the visual activity of mouse manipulation to complete a purchase.

   b.  WCAG 2.4 recommending businesses to provide help for users to navigate, find content and determine where they are on the website due to The Website's lack of links and headings.

   c.  WCAG 4.1 recommending businesses to maximize compatibility with current and future user agents, including assistive technologies, for the reasons stated above.

47.   As described above, Plaintiff has actual knowledge of the fact that Defendant's website, Defendant contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually impaired individuals.

48.   These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the benefits and services of Defendant.

49.   The Website engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    (a)    constructing and maintaining a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    (b)    constructing and maintaining a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    (c)    failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

50.  The Website utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

## **FIRST CAUSE OF ACTION**

(Violation of 42 U.S.C. §§ 12181, *et seq.* — Title III of the Americans with Disabilities Act)
(on behalf of Plaintiff and the Class)

51.  Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

52.  Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

53.  The Website is a public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Website is a service, privilege or advantage of Defendant.

54.  Defendant is subject to Title III of the ADA because it owns and operates the Website.

55.   Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

56.   Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.   Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.   In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.   There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by

other large business entities in making their website accessible, including but not limited to: ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

60.   The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of the Website who are blind have been denied full and equal access to The Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

61.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

62.   As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

63.   Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

64.   The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

65.   Plaintiff is also entitled to reasonable attorneys' fees and costs.

66.   Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

incorporated therein Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**

(Violation of New York State Human Rights Law, N.Y. Exec. Law,
Article 15 (Executive Law § 292 *et seq*.)
(on behalf of Plaintiff and New York subclass)

67.  Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

68.  N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

69.  The Website is a public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Website is a service, privilege or advantage of Defendant.

70.  Defendant is subject to New York Human Rights Law because it owns and operates the Website. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

71.  Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the Website, causing Defendant and the services integrated with Defendant to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

72.  Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in

16

policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

73.    In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

74.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their website accessible, including but not limited to: ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

75.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exc. Law § 296(2) in that Defendant has:

(a)    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b)    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

17

      (c)    failed to take actions to correct these access barriers in the face of

substantial harm and discrimination to blind class members.

76. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

77.  As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant and Defendant Stores under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

78.  The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

79.  Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

80.  Plaintiff is also entitled to reasonable attorneys' fees and costs.

81.  Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## **THIRD CAUSE OF ACTION**

(Violation of New York State Civil Rights Law, NY CLS Civ R,

Article 4 (CLS Civ R § 40 *et seq.*)

(on behalf of Plaintiff and New York subclass)

82.  Plaintiff <u>served</u> notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

83.  Plaintiff realleges and incorporates by reference the foregoing allegations as though

fully set forth herein.

84.  N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof …"

85.  N.Y. Civil Rights Law § 40-c(2) provides that "no person because of … disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision"

86.  The Website is a public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Website is a service, privilege or advantage of Defendant.

87.  Defendant is subject to New York Civil Rights Law because it owns and operates the Website. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

88.  Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the Website, causing Defendant and the services integrated with the Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public.

89.  There are readily available, well established guidelines on the Internet for making

websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their website accessible, including but not limited to: ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

90.  In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two … shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby…"

91.  Specifically, under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside …"

92.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

93.  As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

94.  Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

## FOURTH CAUSE OF ACTION

(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq.*)
(on behalf of Plaintiff and New York subclass)

95.  Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

96.  N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of … disability … directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

97.  The Website is a public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Website is a service, privilege or advantage of Defendant.

98.  Defendant is subject to City Law because it owns and operates the Website. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

99.  Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to The Website, causing Defendant and the services integrated with Defendant Stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities … any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to … enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

100. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

      (a)    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      (b)    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      (c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

101. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

102. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

103. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

104. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

105. Plaintiff is also entitled to reasonable attorneys' fees and costs.

106. Pursuant to N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies,

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Declaratory Relief)
(on behalf of Plaintiff and the Class)

107. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

108. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that The Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Defendant and by extension the Website, which Defendant owns, operates, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

109. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

110. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

111. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, The Website, into full compliance with the requirements set forth

in the ADA, and its implementing regulations, so that Defendant is readily accessible to and usable by blind individuals;

112. A declaration that Defendant owns, maintains and/or operates their website, The Website, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

113. An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

114. Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed subclass for violations of their civil rights under New York State Human Rights Law and City Law;

115. Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

116. For pre- and post-judgment interest to the extent permitted by law; and

117. Such other and further relief as the Court deems just and proper

DATED: October 23, 2017

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181


By: */s/ C.K. Lee*_____
            C.K. Lee, Esq.